Laura R. Hall
Jonathan Cho
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

*Counsel to the Foreign Representatives of Greensill Capital (UK) Limited*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| GREENSILL CAPITAL (UK) LIMITED (IN ADMINISTRATION),[1] | Case No. 21-_____ (___) |
| Debtor in a Foreign Proceeding. | |

**MEMORANDUM OF LAW IN SUPPORT OF
VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING**

[1] The last four digits of Greensill Capital (UK) Limited's Company Registration Number are 6173.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....1
JURISDICTION AND VENUE ....2
BACKGROUND ....3
ARGUMENT ....3
A. GCUK Meets the General Eligibility Requirements of Section 109(a) ....3
B. The English Proceeding is Entitled to Recognition as Foreign Main Proceeding ....4
i. The English Proceeding is a "Foreign Proceeding" .... 5
ii. The English Proceeding is a "Foreign Main Proceeding" .... 6
iii. This Case Was Commenced by GCUK's authorized "Foreign Representatives" .... 8
iv. This Case Was Properly Commenced under Chapter 15 of the Bankruptcy Code .... 8
v. The English Proceeding Should be Recognized as Foreign Main Proceeding .... 10
C. The Relief Requested by the Chapter 15 Petition Is Consistent with United States Public Policy and Policy Behind the Bankruptcy Code ....10
CONCLUSION ....13

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*In re Aerovias Nacionales de Colombia S.A. (In re Avianca)*,
303 B.R. 1 (Bankr. S.D.N.Y. 2003)....................................................................................4

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009)................................................................................12

*In re B. Endeavour Shipping Co. Ltd.*,
Case No. 15-10246-REG [ECF No. 10] (Bankr. S.D.N.Y. Mar. 10, 2015) .............................6

*In re B.C.I. Fins. Pty Ltd. (In Liquidation)*, 583 B.R. 288 (Bankr. S.D.N.Y. 2018) .......................4

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) .........................9

*In re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009) ..............................................................8

*Canada S. Ry. Co. v. Gebhard*,
109 U.S. 527 (1883)...........................................................................................................12

*Cornfeld v. Investors Overseas Servs., Ltd.*,
471 F. Supp. 1255 (S.D.N.Y. 1979)...................................................................................12

*Drawbridge Special Opps. Fund LP v. Barnet (In re Barnet)*,
737 F.3d 238 (2d Cir. 2013).................................................................................................4

*GMAM Inv. Funds Tr. I v. Globo Comunicacoes e Partipacoes S.A. (In re Globo Comunicacoes e Partipacoes S.A.)*,
317 B.R. 235 (S.D.N.Y. 2004)..............................................................................................4

*Harkand Gulf Contracting Ltd.*, Case No. 16-33091(EVR) [ECF No. 58] (Bankr. S.D. Tex. July 25, 2016) ....................................................................................................6

*In re Ionosphere Clubs, Inc.*,
922 F.2d 984 (2d Cir. 1990).........................................................................................11, 12

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005)...............................................................................................12

*In re Karhoo USA Inc. (in administration)*, Case No. 16-13546 (MKV) [ECF No. 3] (Bankr. S.D.N.Y. Dec. 20, 2016) ...................................................................6, 9

*Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re SphinX, Ltd.)*,
371 B.R. 10 (S.D.N.Y. 2007)................................................................................................7

*In re Metcalfe & Mansfield Alt. Inv.*,
421 B.R. 685 (Bankr. S.D.N.Y. 2010) ........ 11

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.*),
714 F.3d 127 (2d Cir. 2013) ........ 7

*In re Privilege Wealth Plc*, Case No. 18-25493 (JKS) [ECF No. 11] (Bankr. D. N.J. Sept. 6, 2018) ........ 6

*RSM Richter Inc. v. Aguilar (In re Ephedra Prods. Liab. Litig.)*,
349 B.R. 333 (S.D.N.Y. 2006) ........ 11

*In re Sino-Forest*,
501 B.R.655 (S.D.N.Y. 2013) ........ 11

*In re SPhinX, Ltd.*,
351 B.R. 103 (Bankr. S.D.N.Y. 2006) *aff'd*, *Krys v. Official Comm. of Unsecured Creditors of Refco Inc.* (*In re SphinX, Ltd.*), 371 B.R. 10 (S.D.N.Y. 2007) ........ 7

*In re Tradex Swiss AG*, 384 B.R. 34 (Bankr. D. Mass. 2008) ........ 8

*In re Vitro S.A.B. de CV*,
701 F.3d 1036 (5th Cir. 2012) ........ 11

**STATUTES**

11 U.S.C. § 103(a) ........ 3

11 U.S.C. § 101(23) ........ 4, 5, 6

11 U.S.C. § 101(24) ........ 5, 8

11 U.S.C. § 109(a) ........ 3, 4, 10

11 U.S.C. § 304(c) ........ 5

11 U.S.C. § 1501 ........ 3, 11

11 U.S.C. § 1501(a) ........ 13

11 U.S.C. § 1502 ........ 4, 5, 7

11 U.S.C. § 1502(3) ........ 5

11 U.S.C. § 1502(4) ........ 4, 6, 8

11 U.S.C. § 1504 ........ 1, 3, 9, 10

11 U.S.C. § 1506 .......... 4, 11

11 U.S.C. § 1509 .......... 3

11 U.S.C. § 1509(a) .......... 10

11 U.S.C. § 1515 .......... *passim*

11 U.S.C. § 1515(a) .......... 9

11 U.S.C. § 1515(b) .......... 9

11 U.S.C. § 1516(b) .......... 10

11 U.S.C. § 1516(c) .......... 7

11 U.S.C. § 1517 .......... 1, 3

11 U.S.C. § 1517(a) .......... 4, 5, 8

11 U.S.C. § 1517(b)(1) .......... 6, 7

11 U.S.C. § 1519 .......... 10

11 U.S.C. § 1520 .......... 3

28 U.S.C. § 157 .......... 3

28 U.S.C. § 157(b)(2)(P) .......... 3

28 U.S.C. § 1334 .......... 3

28 U.S.C. § 1410 .......... 3

**<u>OTHER AUTHORITIES</u>**

8 Richard Levin & Henry J. Sommer COLLIER ON BANKRUPTCY (16th ed. 2018) .......... 6

Fed. R. Bankr. P. 1007(a)(4) .......... 10

Fed. R. Bankr. P. 7007.1 .......... 10

H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88 .......... 5

UNCITRAL Model Law, European Council Regulation (EC) No 1346/2000 of 29 May 2000 .......... 7

Christine Mary Laverty, Trevor Patrick O'Sullivan, and William George Edward Stagg are the duly-authorized representatives (the **Foreign Representatives**) of Greensill Capital (UK) Limited (**GCUK**), a debtor in administration under English law (the **English Proceeding**) pursuant to the Insolvency Act 1986 (the **Insolvency Act**), sealed and endorsed by the High Court of Justice, the Business and Property Courts of England and Wales, Insolvency and Companies List (the **English Court**).

The Foreign Representatives have commenced this chapter 15 case ancillary to the English Proceeding by filing an Official Form B401 and a *Verified Petition for Recognition of Foreign Proceeding* (the **Verified Petition** and, together with the Official Form B401, the **Chapter 15 Petition**), with accompanying documentation, pursuant to sections 1504 and 1515 of title 11 of the United States Code (the **Bankruptcy Code**) seeking the entry of an order recognizing the English Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code and granting related relief.

The Foreign Representatives file this Memorandum of Law setting forth the legal argument for the relief sought in the Chapter 15 Petition.

## PRELIMINARY STATEMENT

GCUK is part of the Greensill group, a global financial services firm consisting of Greensill Capital Pty Limited and its various subsidiaries. GCUK, as the main trading entity for the Greensill group, was principally in the business of arranging supply chain and other working capital financing for its customers. Generally, it would do so by acquiring payment obligations and related rights and onselling such assets to investors, either directly or in the form of receivables-backed notes issued by bankruptcy remote special purpose vehicles, through automated IT platforms that facilitated high transaction volume and allowed transactions to be completed in periods as brief as a single business day.

Beginning in 2020, the Greensill group experienced increasing liquidity pressures and, accordingly, towards the end of 2020 and continuing through early 2021, explored various options to avoid formal restructuring processes. These efforts were unsuccessful due to a number of factors, including, most significantly, the failure to renew insurance coverage critical to the origination of new business. Such failure had a cascading effect that ultimately lead to the insolvency of the group and the commencement of formal insolvency proceedings for group entities in multiple jurisdictions. In the UK, the directors of GCUK and its sister company, Greensill Capital Management Company (UK) Limited, applied to the English Court for the appointment of administrators in early March 2021, and the Foreign Representatives were appointed as joint administrators of both companies on March 8, 2021.

Since their appointment, the Foreign Representatives have continued to manage the affairs, business, and property of GCUK in order to achieve an orderly wind-down and facilitate the recovery of assets for the benefit of creditors. The Foreign Representatives seek chapter 15 recognition of the English Proceeding as to GCUK to further these efforts by protecting GCUK's assets and operations in the United States and staying the commencement or continuation of US litigation against GCUK. Such relief would be consistent with the underlying purposes of chapter 15, which is designed to, *inter alia*, protect and maximize the value of a foreign debtor's assets and ensure the orderly administration of foreign insolvency proceedings.

The relief sought by the Chapter 15 Petition should be granted for the reasons set forth below and in the Chapter 15 Petition.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 1501, and the *Amended Standing Order of Reference of the United States District Court for the Southern District of New York*, dated January 31, 2012, Reference M-431. *In re Standing*

*Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are sections 1504, 1509, 1515, 1517, and 1520 of the Bankruptcy Code.

## BACKGROUND

1. For a description of relevant English law, the Court is respectfully referred to the *Declaration of Katrina Mary Buckley in Support of Verified Petition for Recognition of Foreign Proceeding* dated August 18, 2021, and filed contemporaneously herewith (the **Buckley Declaration**). For a description of the background leading to the appointment of the Foreign Representatives, the conduct of the English Proceeding, and the business of GCUK, the Court is respectfully referred to the Chapter 15 Petition, the factual portions of which the Foreign Representatives incorporate by reference herein as if fully set forth in this Memorandum of Law. Unpublished or foreign decisions and orders cited in this Memorandum of Law are annexed to the *Declaration of Laura Hall* dated August 18, 2021, and filed contemporaneously herewith (the **Hall Declaration**).

## ARGUMENT

### A. GCUK Meets the General Eligibility Requirements of Section 109(a)

2. Section 103(a) of the Bankruptcy Code provides that chapter 1, including section 109(a), applies in a case under chapter 15. 11 U.S.C. 103(a). Section 109(a), in turn, provides that "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under [the Bankruptcy Code]." 11 U.S.C. § 109(a). GCUK must therefore have a domicile, a place of business, or property in the United States to be eligible for relief under chapter 15. *See also Drawbridge Special Opps. Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013). Section 109(a)'s property requirement may be "satisfied by even a

minimal amount of property located in the United States." *See, e.g., In re B.C.I. Fins. Pty Ltd.* (*In Liquidation*), 583 B.R. 288, 294; *GMAM Inv. Funds Tr. I v. Globo Comunicacoes e Partipacoes S.A. (In re Globo Comunicacoes e Partipacoes S.A.)*, 317 B.R. 235, 249 (S.D.N.Y. 2004) (stating that courts have repeatedly found that there is "'virtually no formal barrier' to having federal courts adjudicate foreign debtors' bankruptcy proceedings") (citing *In re Aerovias Nacionales de Colombia S.A. (In re Avianca)*, 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003)).

3. GCUK's principal US assets consist of claims against US-based obligors and the group's principal US place of business was in New York. Chapter 15 Petition ¶ 19. GCUK therefore meets the general eligibility requirements of section 109(a) of the Bankruptcy Code.

**B. The English Proceeding is Entitled to Recognition as Foreign Main Proceeding**

4. Section 1517(a) of the Bankruptcy Code provides, in pertinent part, that:

> [s]ubject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).

5. An order recognizing the English Proceeding should therefore be entered if: (i) the English Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code; (ii) the English Proceeding is either a "foreign main proceeding" within the meaning of section 1502(4) or a "foreign nonmain proceeding" within the meaning of section 1502(5); (iii) the Foreign Representatives are "foreign representatives" within the meaning of section 101(24) and "persons" within the meaning of section 101(41); and (iv) the Chapter 15 Petition meets the requirements of section 1515. *Id.*; *see also* H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88, 169 at 175 (noting that the "decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the

sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition"). Because each of the foregoing requirements is satisfied, the Foreign Representatives respectfully submit that the Court should enter an order granting recognition to the English Proceeding.

***i.*** **The English Proceeding is a "Foreign Proceeding"**

6. The English Proceeding is a "foreign proceeding" and, as such, satisfies the first condition for entry of an order recognizing such proceeding under Section 1517(a) of the Bankruptcy Code. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> [a] collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). The Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding." *See* 11 U.S.C. § 1502(3).

7. As described in the Buckley Declaration, it is clear that the English Proceeding qualifies as a "foreign proceeding" under Section 101(23) of the Bankruptcy Code. The English Proceeding is pending in England, a constituent member of the United Kingdom. It is a proceeding under the Insolvency Act, an English law relating to insolvency and the adjustment of debt, and conducted under the supervision of the English Court. Buckley Declaration ¶¶ 11-13, 24. The English Proceeding is "collective" because, like a case under the Bankruptcy Code, it affects and is for the benefit of GCUK's creditors and other parties in interest generally, as opposed to a single creditor, and such parties are entitled to participate in the English Proceeding. 8 Richard Levin & Henry J. Sommer COLLIER ON BANKRUPTCY ¶ 1501.03 (16th ed. 2018) ("The 'collective proceeding' requirement is intended to limit access to chapter 15 to proceedings that benefit

creditors generally and to exclude proceedings that are for the benefit of a single creditor."). The English Proceeding is "judicial" because it is supervised by the English Court, which has jurisdiction over proceedings with respect to companies registered in England and Wales under the Insolvency Act and, like a bankruptcy court in a chapter 11 case, plays an active role in the administration of the proceeding. Buckley Declaration ¶¶ 24-30.

8. US courts have consistently recognized foreign proceedings from common law jurisdictions as "foreign proceedings" for purposes of chapter 15 of the Bankruptcy Code, including in particular English administration proceedings commenced pursuant to the Insolvency Act. *See, e.g.*, *In re Karhoo Inc. (in administration),* Case No. 16-13545 (MKV) [ECF No. 3] (Bankr. S.D.N.Y. Feb. 1, 2017) (recognizing an English administration proceeding as a foreign main proceeding); *In re B. Endeavour Shipping Co. Ltd.*, Case No. 15-10246 (REG) [ECF No. 10] (Bankr. S.D.N.Y. Mar. 10, 2015) (same); *In re Privilege Wealth Plc*, Case No. 18-25493 (JKS) [ECF No. 11] (Bankr. D. N.J. Sept. 6, 2018) (same); *Harkand Gulf Contracting Ltd.*, Case No. 16-33091(EVR) [ECF No. 58] (Bankr. S.D. Tex. July 25, 2016) (same).

9. Accordingly, the English Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

***ii. The English Proceeding is a "Foreign Main Proceeding"***

10. Section 1502(4) of the Bankruptcy Code defines a "foreign main proceeding" as a "foreign proceeding pending in the country where the debtor has the center of its main interests," and section 1517(b)(1) provides that a foreign proceeding shall be recognized "as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. §§ 1502, 1517(b)(1).

11. While the Bankruptcy Code does not define "center of its main interests," courts have equated the concept with a debtor's principal place of business, examining factors such as

the location of the debtor's headquarters, management, assets, creditors, and/or the law whose jurisdiction would apply to most disputes. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.*), 714 F.3d 127, 137 (2d Cir. 2013) (quoting *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)). A debtor's center of main interests should also "correspond to the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." *Id*. at 138 (citing guidance from the European enactment of the UNCITRAL Model Law, European Council Regulation (EC) No 1346/2000 of 29 May 2000).

12. Here, GCUK is a private limited company incorporated and registered under the laws of England and Wales, with its current registered office located in Manchester, England. Chapter 15 Petition ¶ 16. Its previous registered office was also located in England at One Southampton Street, Covent Garden, London, WC2R 0LR. *Id.*

13. The Court may presume, in the absence of evidence to the contrary, that the location of GCUK's registered office is GCUK's "center of main interests." 11 U.S.C. § 1516(c). This presumption is consistent with the GCUK's operations, as it has principally operated out of England and Wales throughout its existence and, since the commencement of the English Proceeding, has been administered by the Foreign Representatives out of London. GCUK's working capital financing arrangements have principally been structured out of that jurisdiction and the contracts governing such arrangements, including the Notes, are predominantly governed by English law. Prior to the administration, GCUK's management was located in England and Wales and its operations were historically supported by employees of its affiliate, Greensill Capital Management Company (UK) Limited, which is also an English entity. As such, there is little basis for third parties to view GCUK's center of main interests as being located in any jurisdiction other than England and Wales.

14. The English Proceeding is therefore pending where GCUK has its center of main interests and constitutes a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code.

***iii. This Case Was Commenced by GCUK's authorized "Foreign Representatives"***

15. To be recognized as a foreign proceeding under section 1517(a) of the Bankruptcy Code, the foreign representatives applying for recognition must be:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."

11 U.S.C. § 101(24)

16. The Foreign Representatives in this case are individuals who have been duly appointed by the English Court at the request of GCUK's director, empowering them to administer the Company's assets and affairs. Chapter 15 Petition ¶ 4. Foreign representatives need not be appointed specifically for the purpose of acting in other proceedings, but may be persons appointed to administer the debtor's assets in that foreign proceeding. *See*, *e.g.*, *In re Betcorp Ltd.*, 400 B.R. 266, 294 (Bankr. D. Nev. 2009) (holding that Australian liquidators, authorized to act on debtor's behalf and carry out appropriate duties, were "foreign representatives" within the definition of section 101(24)); *In re Tradex Swiss AG*, 384 B.R. 34, 37, 41 (Bankr. D. Mass. 2008). In fact, the United States Bankruptcy Court for the Southern District of New York has on several other occasions recognized joint administrators appointed pursuant to the Insolvency Act as "foreign representatives" within the meaning of the Bankruptcy Code. *See Karhoo*, Case No. 16-13546 (MKV) [ECF No. 3]. Accordingly, the Foreign Representatives are properly recognized and duly authorized as "foreign representatives" within the Bankruptcy Code.

***iv. This Case Was Properly Commenced under Chapter 15 of the Bankruptcy Code***

17. This chapter 15 case was duly and properly commenced as required by section 1504 of the Bankruptcy Code by filing a petition for recognition pursuant to section 1515(a) of the Bankruptcy Code. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).

18. Pursuant to section 1515(b) of the Bankruptcy Code, a petition for recognition must be accompanied by one of the following:

i. a certified copy of the decision commencing such foreign proceeding and appointing the foreign representatives;

ii. certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representatives; or

iii. in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representatives.

19. A copy of the English Court's Administration Order dated March 8, 2021, formally commencing the English Proceeding and appointing the Foreign Representatives as joint administrators, is attached to the Official Form B401 *Chapter 15 Petition for Recognition of a Foreign Proceeding*.

20. The Chapter 15 Petition was also filed accompanied by all fees, documents and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the **Bankruptcy Rules**), including (i) a corporate ownership statement containing the information required by Bankruptcy Rule 7007.1; (ii) a list containing (a) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, and (b) all entities

against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; and (iii) a statement identifying all foreign proceedings with respect to the Debtor that are known to the Foreign Representatives.

21. Having filed the above-referenced documents and because the Court is entitled to presume the authenticity of such documents filed in connection with the petition for recognition under section 1516(b) of the Bankruptcy Code, the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4) have been met and this chapter 15 case was properly commenced. *See* 11 U.S.C. §§ 1504, 1509(a), 1515; Bankruptcy Rule 1007(a)(4).

***v. The English Proceeding Should be Recognized as Foreign Main Proceeding***

22. As demonstrated above, the English Proceeding is a "foreign main proceeding" under chapter 15 of the Bankruptcy Code because: (i) GCUK satisfies the general eligibility requirements to be a debtor under the Bankruptcy Code under Section 109(a) of the Bankruptcy Code; (ii) the English Proceeding is a "foreign proceeding" and a "foreign main proceeding"; (iii) the Chapter 15 Petition was filed by the Foreign Representatives as the duly appointed "foreign representatives" of GCUK; and (iv) the filing complies with all relevant requirements of the Bankruptcy Code and the Bankruptcy Rules.

**C. The Relief Requested by the Chapter 15 Petition Is Consistent with United States Public Policy and Policy Behind the Bankruptcy Code**

23. The purpose of chapter 15 is set forth in section 1501 of the Bankruptcy Code and includes:

> (i) cooperation between (a) courts of the United States, the United States Trustee, trustees, examiners, debtors, and debtors in possession; and (b) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases; (ii) greater legal certainty for trade and investment; (iii) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor; (iv) protection and maximization of the value of the debtor's assets; and (v) facilitation of the rescue

> of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501. Recognition of the English Proceeding as a "foreign main proceeding" comports with all of these objectives.

24. While section 1506 of the Bankruptcy Code provides that nothing in chapter 15 shall prevent the Court from refusing to take an action otherwise required therein if such action would be manifestly contrary to the public policy of the United States, the public policy exception is narrowly construed. *See*, *e.g.*, *RSM Richter Inc. v. Aguilar (In re Ephedra Prods. Liab. Litig.)*, 349 B.R. 333, 336 (S.D.N.Y. 2006); *In re Sino-Forest*, 501 B.R.655, 665 (S.D.N.Y. 2013); *Metcalfe*, 421 B.R. at 697; *In re Vitro S.A.B. de CV*, 701 F.3d 1036, 1069 (5th Cir. 2012). Moreover, the public policy exception must be viewed in light of one of the fundamental goals of the Bankruptcy Code—the centralization of disputes involving the debtor. *See*, *e.g.*, *In re Ionosphere Clubs, Inc.*, 922 F.2d at 989 ("The Bankruptcy Code provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . . .") (internal citations and quotation marks omitted). Indeed, as some courts have noted:

> American courts have long recognized the need to extend comity to foreign bankruptcy proceedings because the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail.

*Atlas Shipping*, 404 B.R. at 733 (internal quotation marks omitted) (citing *Victrix*, 825 F.2d at 713–14); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding.").

25. Recognition of the English Proceeding would promote the fair and efficient administration of a cross-border winding-up and liquidation that protects the interests of all stakeholders and interested parties. By recognizing the English Proceeding and granting the related

relief requested in the Chapter 15 Petition, the process of administering GCUK's assets, as well as its debts and obligations to its creditors, would be centralized in England, which is a fundamental goal of the Bankruptcy Code. *See*, *e.g.*, *Ionosphere*, 922 F.2d at 989; *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (noting that "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction"). Such debts and obligations would be administered according to English law, which is similar to comparable United States laws, and any disputes would be subject to the uniform jurisdiction of one tribunal—the English Court. Recognition and enforcement will enable the orderly administration of GCUK's restructuring and foster cooperation between courts in England and the United States. Such orderly administration is demonstrably consistent with the public policy of the United States and the Bankruptcy Code. If the administration sanctioned by the English Court is not recognized and enforced in the United States, the uniform and orderly process of the English Proceeding would be jeopardized. *See*, *e.g.*, *Canada S.Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883)("Unless all parties in interest, wherever they reside, can be bound by the arrangement which is sought to have legalized, the scheme will fail. All home creditors can be bound. What is needed is to bind those who are abroad. Under these circumstances the true spirit of international comity requires that schemes of this character, legalized at home, should be recognized in other countries.").

26. Further, if the Court does not recognize and enforce the English Proceeding, the Foreign Representative's efforts to realize maximum value for GCUK's stakeholders may be prejudiced. The failure to enjoin creditors in the United States may result in unnecessary enforcement costs or the piecemeal disposition of assets to the detriment of GCUK and its various stakeholders. The purpose of chapter 15 is to prevent such harms. *See* 11 U.S.C. § 1501(a) (noting

that, among other objectives described herein, chapter 15 facilitates "the rescue of financially troubled business" and provides for the "fair and efficient administration of cross-border insolvencies").

27. Avoiding such potential adverse outcomes through the formal recognition of the English Proceeding in the United States accomplishes the principal objectives Congress articulated when it enacted chapter 15 of the Bankruptcy Code and otherwise comports with US public policy.

## CONCLUSION

WHEREFORE, the Foreign Representatives respectfully request that this Court grant the relief requested in the Chapter 15 Petition and such other and further relief as may be just and proper.

Dated: New York, New York
August 18, 2021

**ALLEN & OVERY LLP**

By: /s/ Laura R. Hall
Laura R. Hall
Jonathan Cho
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
laura.hall@allenovery.com
jonathan.cho@allenovery.com

*Counsel to the Foreign Representatives of Greensill Capital (UK) Limited*