Laura R. Hall
Jonathan Cho
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:    (212) 610-6300
Facsimile:    (212) 610-6399

*Counsel to the Foreign Representatives*
*of Greensill Capital (UK) Limited (in administration)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GREENSILL CAPITAL (UK) LIMITED (IN ADMINISTRATION),[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 21-_____ (___) |

## DECLARATION OF KATRINA MARY BUCKLEY IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING

Pursuant to 28 U.S.C. § 1746, I, Katrina Mary Buckley, declare under penalty of perjury under the laws of the United States of America, that, based upon my knowledge, information, and belief as set forth herein, the following are true and correct:

### BACKGROUND

1.      I am a person of the full age and majority, I have never been convicted of a felony or any crime involving moral turpitude, and I am competent to make this declaration (this **Declaration**).

2.      I am a solicitor duly admitted to practice in England and Wales, and a partner in the law firm of Allen & Overy LLP.

---

[1]      The last four digits of Greensill Capital (UK) Limited's Company Registration Number are 6173.

0125897-0000006 UKO1: 2005271998.3                    1

3.      Allen & Overy LLP acts as English law counsel to Christine Mary Laverty, Trevor Patrick O'Sullivan and William George Edward Stagg, each of Grant Thornton UK LLP of 30 Finsbury Square, Finsbury, London EC2A 1AG, each in their capacity as the joint administrators (the **Administrators**) of the aforementioned Debtor, Greensill Capital (UK) Limited (in administration) (**GCUK**). Allen & Overy LLP, London represents GCUK together with Allen & Overy LLP located at 1221 Avenue of the Americas, New York, 10020 as New York law counsel to GCUK in connection with this Chapter 15 Petition.

4.      On 8 March 2021, by order of the High Court of Justice Business and Property Courts of England and Wales (the **English Court**), the Administrators were appointed to GCUK and GCUK entered into administration. A true and correct copy of the official electronic copy court order appointing the Administrators issued by the English Court is attached to this Declaration as **Exhibit A**.

5.      I submit this Declaration in support of the *Verified Petition for Recognition of Foreign Proceeding* filed contemporaneously herewith (together with the Official Form B401 Petition ECF No. 1 filed contemporaneously herewith, the **Chapter 15 Petition**). The Chapter 15 Petition seeks, among other relief, (i) the entry of an order granting recognition of the ongoing administration proceedings of GCUK as a "foreign main proceeding" pursuant to chapter 15 of title 11 of the United States Code (the **Bankruptcy Code**) and  (ii) all relief afforded to foreign main proceedings automatically upon recognition pursuant to section 1520 of the Bankruptcy Code, including, without limitation, application of the automatic stay imposed by section 362 of the Bankruptcy Code.

6.      In preparing this Declaration, I have reviewed: (a) the Chapter 15 Petition; and (b) relevant provisions of English law as they relate to chapter 15 of the Bankruptcy Code and other aspects of U.S. bankruptcy law. All facts set forth in this Declaration are based on: (a) my knowledge;

and (b) my review of relevant documents. If called upon to testify, I could and would testify competently to the facts set forth herein.

7.      This Declaration comprises matters that are statements of legal opinion and/or statements of fact. Where the matters stated in this Declaration are statements of legal opinion, such statements represent my view of English law as a practicing lawyer admitted and licensed to practice in England and Wales. Where the matters stated in this Declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this Declaration are statements of fact not within my personal knowledge, they are derived from documents or information supplied to me by or on behalf of GCUK and/or the Administrators (or other members of the Grant Thornton UK LLP team) and are true to the best of my knowledge, information, and belief.

8.      In this Declaration, I provide a description of English law and practice relevant to this court's consideration of the Chapter 15 Petition.

## PROFESSIONAL BACKGROUND

9.      I am a member in good standing of the Solicitors Regulatory Authority and have been either with the Solicitors Regulatory Authority or its predecessor, the Law Society, since I qualified as a solicitor in 1996.

10.      In over 25 years since my qualification, my practice has focused on corporate restructuring and insolvency. I have considerable experience in matters relating to English insolvency law and cross-border restructurings. I have advised companies, insolvency practitioners and creditors in respect of insolvency proceedings and out of court restructurings. A copy of my professional resume is attached to this Declaration as **Exhibit B**.

## STATEMENTS ON ENGLISH LAW AND PRACTICE

A.      **Legislative framework**

11.    An English administration is a statutory insolvency procedure under the Insolvency Act 1986 (the **Insolvency Act**). Many of the statutory provisions relevant to an English administration can be found in Schedule B1 of the Insolvency Act. A true and correct copy of Schedule B1 of the Insolvency Act is attached to this Declaration at **Exhibit C**.

12.    An English administration proceeding is a collective insolvency procedure that allows for the rescue or reorganisation of a company, or the realisation of its business or assets, under the protection of a statutory moratorium. The moratorium, which is described further in paragraph 16 below, provides the company with protection from creditor action to give the appointed administrator(s) "breathing space" to pursue the statutory objective of the administration (see paragraphs 20 and 21 below). The moratorium does not have extra-territorial effect so as to be binding on the courts of a foreign country. This is one of the principal reasons that this application for recognition under chapter 15 is required.

## B.    Commencement and termination of an administration of a company

13.    An administrator may be appointed to a company that is eligible for the procedure by order of the English Court, following an application by the company itself, its directors, or one or more of the company's creditors.[2] The English Court may make an administration order only if it is satisfied that the company is or is likely to become unable to pay its debts and that the administration order is reasonably likely to achieve the purpose of the administration (see paragraphs 20 and 21 below).[3] In certain circumstances, it is also possible for the appointment of an administrator to take place "out of court" by filing certain prescribed documents at court. In the case of GCUK, the appointment was made by order of the English Court (as referred to in paragraph 4 above) following an application by the sole director of GCUK.

---

[2]    Paragraph 12, Schedule B1 Insolvency Act 1986.
[3]    Paragraph 11, Schedule B1, Insolvency Act 1986.

14.     A company "enters administration" when the appointment of an administrator takes effect, and is "in administration" while the appointment of an administrator of the company has effect.[4]

15.     Upon fulfilment of the purpose of administration, the administrator must bring the administration to an end by exiting by one of the routes prescribed under Schedule B1 of the Insolvency Act. The administration procedure will automatically terminate after 12 months unless extended by court order or with the consent of the creditors.[5] There are a number of other exit routes from administration including creditors' voluntary liquidation. Alternatively, the administrator may seek the leave of the English Court to make distributions to unsecured creditors themselves, in which case it is likely that the company would simply be dissolved at the end of the administration.

C.     **Effect of administration**

16.     Following an application for an administration order (provided that such application has not been discharged), an interim statutory moratorium under the Insolvency Act automatically comes into effect. The moratorium continues on substantially identical terms following the making of an administration order in respect of the company.[6] The statutory moratorium prohibits the commencement of winding up proceedings in respect of the company, save for very limited exceptions.The statutory moratorium stays: (i) the taking of steps to enforce security over the company's property; (ii) the taking of steps to repossess goods in the company's possession under a hire purchase agreement; (iii) the exercise of rights of forfeiture by peaceable re-entry in relation to premises leased to the company; and (iv) the institution or continuation of legal process against the company or property of the company, in each case either without the consent of the administrator or

---

[4]     Paragraph 1, Schedule B1, Insolvency Act 1986.
[5]     Paragraph 76, Schedule B1, Insolvency Act 1986.
[6]     Paragraphs 42, 43 and 44, Schedule B1, Insolvency Act 1986.

the permission of the English Court.[7] I understand that the scope and purpose of the moratorium is

comparable to the automatic stay under section 362 of the Bankruptcy Code.

## D.   Administrator as foreign representative

17.    An administrator is a person who is appointed under the Insolvency Act for the

duration of an administration proceeding, and is authorised to administer the reorganisation or

liquidation of the company's assets and to act as a representative in relation to an administration

proceeding.

18.    On appointment, the administrator takes over control of the company's property, and

has wide powers to control and manage the affairs, business and property of the company. The

administrator effectively takes over the running of the company from the directors. Further details of

the duties and powers of the administrator are set out in the paragraphs below. In my view, the powers

and responsibilities granted to administrators are sufficiently wide-ranging and comprehensive to

allow them to act as a foreign representative (as defined in the Bankruptcy Code) of the company of

which they are an administrator.

## E.   Qualifications, duties and powers of an administrator

### i.    *Qualifications and general duties of an administrator*

19.    A person may only be appointed as an administrator if that person is qualified to act

as an insolvency practitioner in relation to the company.[8] In respect of their appointments,

administrators are officers of the court.[9] In exercising their functions, administrators act as agents of

the company to which they are appointed,[10] although their duties are owed to the creditors as a

whole.[11]

### ii.    *Purpose of the administration*

---

[7]      Paragraph 43, Schedule B1 Insolvency Act 1986.
[8]      Paragraph 6, Schedule B1, Insolvency Act 1986.
[9]      Paragraph 5, Schedule B1, Insolvency Act 1986.
[10]     Paragraph 69, Schedule B1, Insolvency Act 1986.
[11]     Paragraph 3(2), Schedule B1, Insolvency Act 1986.

20.     The administrator must perform his functions with the objective of achieving one of the "purposes of the administration", which are:

(i)     to rescue the company as a going concern; or

(ii)    achieving a better result for the company's creditors as a whole than would be likely if the company were wound up (without first being in administration); or

(iii)   realising property in order to make distributions to one or more secured or preferential creditors.[12]

21.     The administrator must perform his functions with the objective described in paragraph 20(i) above, unless he considers that it is not reasonably practicable to achieve that objective or that the objective described in paragraph 20(ii) above would achieve a better result for the company's creditors as a whole. An administrator may only perform his functions with the objective described in paragraph 20(iii) above if he considers it is not reasonably practicable to achieve either of the other two objectives, and provided the administrator does not unnecessarily harm the interests of the creditors of the company as a whole.[13] As a general matter, the administrator must perform their functions as quickly and efficiently as is reasonably practicable.[14]

iii.    *Administrator proposals and other duties following appointment*

22.     An administrator must take certain action as soon as is reasonably practicable following his appointment. This includes publishing a notice of the appointment in certain prescribed publications, obtaining a list of the company's creditors and sending a notice of the appointment to each creditor of whose claim and address he is aware. An administrator must also send a notice of his

---

[12]    Paragraph 3(1), Schedule B1, Insolvency Act 1986.
[13]    Paragraph 3, Schedule B1, Insolvency Act 1986.
[14]    Paragraph 4, Schedule B1, Insolvency Act 1986.

appointment to the registrar of companies within seven days of appointment. An administrator commits an offence if he, absent reasonable excuse, fails to comply with his duties regarding the publication and communication of his appointment as prescribed under the Insolvency Act.[15]

23.    As soon as reasonably practicable after the company enters administration, and in any event within eight weeks of the company entering into administration, the administrator is required to produce proposals as to how the purpose of the administration is to be achieved. These proposals must be sent to certain prescribed persons, including every creditor of the company (other than a creditor who has opted out) of whose claim and address the administrator is aware.[16] The proposals are required to contain the information stipulated by rule 3.35 of the Insolvency (England and Wales) Rules 2016/1024, a copy of which is attached hereto as **Exhibit D**.

24.    The administrator's proposals must be approved by a decision of the company's creditors within ten weeks of the company entering into administration. An administrator commits an offence if he fails without reasonable excuse to comply with these obligations.[17] The company's creditors may approve the administrator's proposals without modification or with modification to which the administrator consents. The administrator must report any decision taken by the company's creditors to the English Court and certain other prescribed persons. An administrator commits an offence if he fails without reasonable excuse to comply with these obligations.[18] If the company's creditors have failed to approve the administrator's proposals, the English Court may make any order it thinks appropriate, including declaring that the administration shall cease to have effect from a specified time or ordering that the company be wound up.[19]

iv.    *Key powers of administrators*

---

[15]    Paragraph 46, Schedule B1, Insolvency Act 1986.
[16]    Paragraph 49, Schedule B1, Insolvency Act 1986.
[17]    Paragraph 51, Schedule B1, Insolvency Act 1986.
[18]    Paragraph 53, Schedule B1, Insolvency Act 1986.
[19]    Paragraph 55(2), Schedule B1, Insolvency Act 1986.

25.    The administrator has a general power to do anything necessary or expedient for the management of the affairs, business and property of the company.[20] Additionally, companies in administration or the officers of that company may not exercise management powers without the consent of the administrator,[21] thereby restricting directors from interfering with the exercise of the administrators' powers. On appointment, the administrator shall take custody or control of all the property to which he thinks the company is entitled.[22]

26.    For the purpose of achieving and implementing the administrator's proposals (referred to in paragraph 23 above), the administrator is entitled to do all such things as may be necessary for the management of the affairs, business and property of the company and may exercise all the powers set out in Schedule 1 of the Insolvency Act 1986, a true and correct copy of which is attached hereto as **Exhibit E**.[23] These powers include (among other powers): (i) taking possession of, collecting and getting in the property of the company and taking such proceedings as may seem expedient for that purpose; (ii) selling or otherwise disposing of property of the company; (iii) raising or borrowing money and granting security therefor over the property of the company; (iv) appointing professional advisers to assist the administrator in the performance of their functions; (v) bringing or defending legal proceedings in the name of the company; (vi) doing all acts and executing in the name and on behalf of the company any documents; (vii) establishing subsidiaries and transferring property to them; (viii) making any payments necessary or incidental to the performance of their functions; (ix) granting or accepting a surrender of a lease or tenancy of any property of the company; (x) making any arrangement or compromise on behalf of the company; (xi) carrying on the business of the company; and (xi) doing all things incidental to the exercise of such powers.

---

[20]    Paragraph 59(1), Schedule B1, Insolvency Act 1986.
[21]    Paragraph 64(1), Schedule B1, Insolvency Act 1986.
[22]    Paragraph 67, Schedule B1, Insolvency Act 1986.
[23]    Paragraph 60(1), Schedule B1, Insolvency Act 1986.

27.     The administrator has various specific powers of an administrative nature, including the power to deal with charged property and the power to take action to avoid or unwind antecedent transactions that took place in specific time periods prior to the administration order being made (known as "claw-back"). Such transactions might include transactions at an undervalue, preferences, extortionate credit transactions or transactions defrauding creditors.[24] The administrator is also under a duty to investigate the conduct of the directors of the insolvent company and to report on the same to the UK Secretary of State, who will consider whether to take action to disqualify that director from acting as such in the future.

28.     Further, the administrator may use assets subject to a floating charge as if they were not subject to that charge, save only that the holder of the floating charge has the same priority in respect of any proceeds representing the floating charge assets that he had in respect of the floating charge assets[25]. With the sanction of the English Court, the administrator may also sell fixed charge assets free of the fixed charge, subject only to accounting to the fixed charge holder for market value or, if greater, the sale proceeds actually received (in each case not exceeding the obligations secured by such fixed charge).[26]

v.     *Distributions*

29.     An administrator has the power to make distributions to the creditors of the company in administration. The Insolvency Act 1986 and the Insolvency (England & Wales) Rules 2016 set out the order of priority for distribution of assets and payment of the administrator's remuneration and expenses.

F.     **Challenges to the conduct of an administrator**

---

[24]     Sections 238, 239, 244, 245 and 423, Insolvency Act 1986.
[25]     Paragraphs 70(1) and (2), Schedule B1, Insolvency Act 1986
[26]     Paragraphs 71(1) to 71(3), Schedule B1, Insolvency Act 1986

30.    A creditor or member of a company in administration may apply to the English Court claiming that the administrator is acting or has acted (or proposes to so act) so as unfairly to harm the interests of the applicant (whether alone or in common with some or all other members or creditors). A creditor or member of a company in administration may also apply to the English Court, claiming that the administrator is not performing his functions as quickly or efficiently as is reasonably practicable. In this regard, the English Court has wide discretion to make such order as it thinks appropriate including regulating the administrator's exercise of his functions, requiring the administrator to do or not to do a specified thing, requiring a decision of the company's creditors to be sought on a matter or providing for the appointment of the administrator to cease to have effect.[27]

31.    Finally, the English Court may also examine the conduct of an administrator on the application of certain prescribed persons, including any creditor of the company. Such an application must allege that the administrator has: (i) misapplied or retained money or other property of the company: (ii) become accountable for money or other property of the company; (iii) breached a fiduciary or other duty in relation to the company; or (iv) been guilty of misfeasance. The English Court may order the administrator to: (i) repay, restore or account for money or property; (ii) pay interest; or (iii) contribute a sum to the company's property by way of compensation for breach of duty or misfeasance.[28] Any compensation awarded as a consequence is payable to the company for distribution to the creditors.

---

[27]    Paragraph 74, Schedule B1, Insolvency Act 1986
[28]    Paragraph 75, Schedule B1, Insolvency Act 1986

## CONCLUSION

I, Katrina Mary Buckley, declare under penalty of perjury of the laws of the United States of America that the foregoing statements are true and correct to the best of my information and belief:

18 August 2021, London, England.

K. M Buckley

**KATRINA MARY BUCKLEY**

# EXHIBIT A

## ADMINISTRATION ORDER

**EXHIBIT B**

**PROFESSIONAL RESUME**

**EXHIBIT C**

**SCHEDULE B1, INSOLVENCY ACT 1986**

**EXHIBIT D**

**Rule 3.35, Insolvency (England and Wales) Rules 2016/1024**

**EXHIBIT E**

**Schedule 1, Insolvency Act 1986**